## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

NEW LOOK LASER OF ARLINGTON HTS, INC., and POSH BEAUTY GROUP LLC as successor in interest to NEW LOOK LASER MEDICAL FRANCHISING, INC. d/b/a SKINOVATIO,

               Plaintiffs,

v.

MEDSPA VENTURES LLC, AND SAAD ZUBERI,

               Defendants.

Civil Action No. 1:25-cv-13791

### VERIFIED COMPLAINT

Plaintiffs, New Look Laser of Arlington Hts, Inc. ("NLLAH") and Posh Beauty Group LLC as successor in interest to New Look Laser Medical Franchising, LLC d/b/a Skinovatio ("Posh Beauty," collectively with NLLAH, "Plaintiffs" or "Skinovatio"), sue Defendants, Medspa Ventures LLC and Saad Zuberi, and allege:

### JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a) as to claims asserted under the Lanham Act, 15 U.S.C. § 1051, et seq. This Court also has original jurisdiction over the claim of unfair competition pursuant to 28 U.S.C. § 1338(b).

2.     This Court has original subject matter jurisdiction as to the claims other than those based on the Lanham Act, under 28 U.S.C. § 1367, because those claims are so related to the

claims brought under the Lanham Act that they form a part of the same case or controversy.

3.      Further, an actual justiciable controversy now exists between the parties, and the requested relief is proper under 28 U.S.C §§ 2201-2202.

4.      Venue is appropriate in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district, and Defendants are subject to the court's jurisdiction with respect to this action in this district.

## PARTIES

5.      Plaintiff, New Look Laser of Arlington Hts, Inc., is an Illinois corporation, having a principal place of business in 2632 N. Lincoln Avenue, Chicago, Illinois 60614.

6.      Plaintiff, Posh Beauty Group LLC, as successor in interest to New Look Laser Medical Franchising, Inc. d/b/a Skinovatio, is a Wisconsin limited liability company with its principal place of business in Cook County, Illinois.

7.      Upon information and belief, Defendant, Saad Zuberi ("Zuberi") is an individual residing in the State of Illinois.

8.      Defendant, Medspa Ventures LLC ("Medspa," collectively with Zuberi, "Defendants"), is an Illinois limited liability company, with its principal place of business in Schaumburg, Illinois.

## FACTS

### The Skinovatio Medical Spa System and Trademark

9.      Skinovatio is an established medical spa chain offering skin rejuvenation centers to the public.

10.     Skinovatio licenses others to use its federally-registered trademark, SKINOVATIO MEDICAL SPA that is the subject of U.S. Trademark Registration Number 5905077(the

"Skinovatio Mark"), in the sale of goods and services.

11.     Through the expenditure of time, skill, effort, and money, Posh Beauty is the sole owner and has developed the Skinovatio Mark, which have been used in the development, organization, and operation of a System of medical spas offering skin rejuvenation services to the public.

12.     Posh Beauty has entered into franchise agreements for the right to sell certain products and services utilizing the Skinovatio Mark at various locations throughout the United States.

13.     Posh Beauty goes to great lengths to keep their trade secrets and proprietary information secret and out of the hands of the general public.

14.     The foregoing registration is valid, subsisting, in full force and effect, and cover the goods and services identified in the registration certificates. The registration is incontestable under the Lanham Act, 15 U.S.C. § 1065. A copy of the certificate of registration for the Skinovatio Mark is attached hereto as Exhibit A.

15.     The Skinovatio Mark has been used exclusively by Posh Beauty, its affiliates, and its designated franchisees, in commerce in connection with the operation of Skinovatio businesses since November 2019. Since that time, Skinovatio has grown to nine (9) locations in multiple states (including the Lincoln Park Location).

16.     The Skinovatio Mark has become a valuable asset of substantial and inestimable worth to Skinovatio. The Skinovatio Mark is a symbol of quality experience provided by Skinovatio. Skinovatio has a vital economic interest in protecting its name and the Skinovatio Mark. The preservation and protection of its name and the Skinovatio Mark are essential to the maintenance of the quality of Skinovatio business, and the goodwill and reputation associated with

them.

**Defendants Entered into the Asset Purchase Agreement**

17.     NLLAH, a commonly-owned affiliate of Posh Beauty, owned and operated a Skinovatio Medical Spa at 2632 N. Lincoln Ave., Chicago, Illinois 60614 (the "Lincoln Park Location" or the "Business") and began offering services at the Lincoln Park Location on or about November, 2016.

18.     On October 27, 2022, Zuberi, with additional partners and through the entity, MT & ZU Ventures LLC ("MT & ZU"), entered into a franchise agreement with Posh Beauty's predecessor in interest, New Look Laser Medical Franchising Inc. ("New Look") for the operation of a Skinovatio Business in the South Loop neighborhood of Chicago, Illinois (the "South Loop Location"). MT & ZU began offering services at the South Loop Location on or about March 2025.

19.     In or about September, 2024, Medspa's managing member, Zuberi, approached NLLAH and expressed interest in owning a second Skinovatio Business and inquired whether NLLAH and New Look would be interested in selling the Lincoln Park Location to Medspa as a franchisee.

20.     On or about November 27, 2024, NLLAH entered into an Asset Purchase Agreement with Medspa (the "APA") in connection with the purchase, sale, and subsequent operation of the Lincoln Park Location. A copy of the APA is attached hereto as <u>Exhibit B</u>.[1]

21.     Pursuant to the terms of the APA, Medspa was obligated to, among other things pay NLLAH a purchase price of $150,000 in 60 installment payments of $2,500 on the first day of every month.

22.     In exchange, NLLAH was to transfer: (1) the "business site being operated as a

---

[1]     Plaintiffs attach the only copy of APA in their possession, which is fully executed by NLLAH. Upon information and belief, Defendant is in possession of a fully executed copy of the APA.

SKINOVATIO MEDICAL SPA located at: 2632 N Lincoln Ave, Chicago, IL 60614 [. . . ], together with all assets, equipment, fixtures, inventory, owned by [NLLAH] presently at Premises; and (2) "[a]ll Inventory owned by [NLLAH] located at the Premises at the time of closing."

23.     Further, the express language of the APA required: (1) "Franchisor approval of Franchisee"; and (2) payment of Franchise royalties in an amount equal to that disclosed in Franchisor's then-current Franchise Disclosure Document.

24.     Although contemplated by the APA and the clear intent of the Parties, New Look and Medspa inadvertently failed to sign New Look's then-current franchise agreement at the APA closing.

25.     Accordingly, although the Parties never signed a franchise agreement, they intended themselves to be bound by the terms of Skinovatio's standard-form Franchise Agreement for the operation of a single unit Franchised Business, effective as of November 27, 2024 (the "Franchise Agreement"). A copy of New Look's standard-form, then-current Franchise Agreement is attached hereto as Exhibit C.

26.     While still reflected in writing under the APA, the Parties' intent to be bound by the Franchise Agreement was also manifested in their conduct that highly conformed thereto, such as: (1) Medspa's use of the Mark in connection of the sale of products and services at the Lincoln Park Location; (2) Medspa's principal, Saad Zuberi, already being part of the Skinovatio franchise system; (3) Medspa purchasing the Business as an already operational Skinovatio Medical Spa; (4) Medpsa's continued use and derived benefit of the Skinovatio business and marketing system; and (4) Skinovatio's fulfillment of its obligations under the Franchise Agreement including, but not limited to, provision of an initial training and ongoing support.

27.     As noted above, Zuberi is also a member of MT & ZU, the franchisee entity for

Posh Beauty's South Loop location.

28.     As such, Zuberi is fully familiar with the obligations imposed under the Franchise Agreement, having signed another such agreement and guaranty in his capacity as principal of MT & ZU.

29.     During the term of the Franchise Agreement and APA, Skinovatio agreed to provide Defendants with a license to use Skinovatio's system and trademarks in connection with the operation of a Franchised Business and to provide Defendants with certain assistance, products, supplies, materials, and manuals.

30.     More specifically, Skinovatio provided full onboarding training to staff and owners as part of its franchisee development program.

**Default and Termination of the Asset Purchase Agreement and Franchise Agreement**

31.     In at least November 2024, Defendants became in default of the APA and the Franchise Agreement by, among other things, failing to make royalty payments. Defendants also failed to provide monthly financial reports as required by the Franchise Agreement, making it impossible to verify Defendants' monthly revenue and financial performance. Further, Defendants failed to implement Skinovatio's new EMR system, Boulevard, despite (i) being obligated to under the Franchise Agreement and (ii) being given a three month window for doing so.

32.     Despite Skinovatio's numerous attempts to address Defendants' non-payment and other defaults including, but not limited to, issuance of a formal Notice of Default on May 12, 2025 (the "Default Letter"), Medspa failed to cure its defaults. A copy of the Default Letter is attached hereto as Exhibit D.

33.     Although not obligated to under the terms of the APA or the Franchise Agreement, the Default Letter afforded Defendants thirty (30) days to cure the enumerated defaults which, at

the time, consisted of (among other things) failure to pay royalties for the months of November 2024, December 2024, January 2025, February 2025, March 2025, April 2025, and May 2025. However, once the opportunity to cure elapsed on June 12, 2025, not only had Medspa failed to cure its defaults, but it had also failed to pay royalties for the month of June 2025.

34.    Accordingly, on June 19, 2025, Skinovatio through counsel sent Medspa a Notice of Default and Termination (the "Termination Letter"), thereby terminating the Franchise Agreement and certain rights under the APA, effective immediately. A copy of the Termination Letter is attached hereto as Exhibit E.

35.    Between June 19, 2025 (the date of the initial termination letter) and September 19, 2025, the Parties engaged in settlement discussions to potentially amicably resolve this matter. Those discussions were conducted with Plaintiffs' express reservation of all rights under the APA and Franchise Agreement.

36.    During this time, Defendants also failed to comply with their continuing obligation under the APA to make timely monthly purchase price installment payments. Although Defendants occasionally submitted late payments, they were chronically delinquent (often by as many as four weeks late), thereby placing themselves in continuing default of the APA.

37.    Further, in the months of September and October 2025, Defendants failed to make any payment whatsoever. These repeated failures further confirmed that Defendants had no intent to comply with their contractual obligations and reinforced the basis for termination.

38.    Upon information and belief, during the pendency of the Parties' settlement discussions, Defendants transferred the Lincoln Park Business and/or a portion or all of its assets without Plaintiffs' prior consent, as required under the Franchise Agreement.

39.    On October 28, 2025, Plaintiff became aware that Lincoln Park landlord had issued

a five-day notice for unpaid rent in the amount of approximately $12,000, threatening immediate eviction if payment was not received.

40. Subsequent communications between Skinovatio's Chief Operating Officer Aleksandra Waibel ("Ms. Waibel") and the building manager revealed that, as of the date of this filing, Defendants had made only a partial payment of $5,000 toward the outstanding balance, which still totaled $11,318.90. Defendants failed to respond to the landlord's demand for payment.

41. These additional defaults, including Defendants' failure to pay rent and failure to assume responsibility for the Lincoln Park lease, further demonstrate Defendants' continuing breach of their obligations under the Asset Purchase Agreement and the implied Franchise Agreement, and underscore their bad faith in operating the Business post-termination.

42. At all times during settlement discussions, Plaintiffs expressly reserved their rights under the Franchise Agreement and APA, including their right to require authorization for any transfer or sale of the Business. Defendants' unauthorized transfer further breached the APA and Franchise Agreement and independently justified Plaintiffs' subsequent confirmation of termination.

43. When settlement was not reached, and in light of Defendants' continued violations of the APA and Franchise Agreement, Plaintiffs, through counsel, sent Defendants a written confirmation of termination on September 19, 2025 (the "Termination Confirmation"). A copy of the Termination Confirmation is attached hereto as <u>Exhibit F</u>.

44. As a result of the valid termination of the APA and the Franchise Agreement, Medspa has numerous post-termination obligations it must fulfill (the "Post-Termination Obligations"), including, but not limited to:

(a) immediately cease to operate the Franchised Business and not thereafter, directly or indirectly, represent to the public or hold itself out as a present or former franchisee of Franchisor;

(b) cease to use the Trade Secrets or other Confidential Information, the System and the Marks, including, without limitation, all slogans, symbols, logos, advertising materials, stationery, forms, and any other items which display or are associated with the Marks;

(c) take such action as may be necessary to cancel or assign to Franchisor, at Franchisor's option, any assumed name or equivalent registration filed with state, city, or county authorities which contains the name "Skinovatio Medical Spa" or any other Mark, and You shall furnish Franchisor with evidence satisfactory to Franchisor of compliance with this obligation within thirty (30) days after termination or expiration of this Agreement;

(d) pay all sums owing to Franchisor and any Affiliate, including all damages, costs, and expenses. These include, but are not limited to, reasonable attorneys' fees, with respect to litigation, arbitration, appellate, or bankruptcy proceedings, unpaid Royalty Fees, loss of future Royalty Fee payments incurred by Franchisor as a result of any early termination of this Agreement, and any other amounts due to Franchisor or any Affiliate; and

(e) immediately return to Franchisor the Operations Manual, Trade Secrets, and all other Confidential Information, including records, files, instructions, brochures, agreements, disclosure statements, and any and all other materials provided by Franchisor to You relating to the operation of the Franchised Business (all of which are acknowledged to be Franchisor's property).

See Exhibit C, at § 17.1.

45.     As of the time of this filing, Medspa, through Zuberi and/or an unknown party, has continued to use the Skinovatio Mark in operating the Business. A medical spa continues to operate at the address of the Business, which is still advertised on Yelp:



(Last visited October 31, 2025).

46.     Birdeye, another review platform on which the Business is currently listed, also shows that the Business is still operational:



(Last visited October 31, 2025).

47.     Moreover, in furtherance of Defendants' violative efforts, Defendants are continuing to use a booking software, Vagaro, to book clients for their formerly-franchised Skinovatio spa:



(Last visited October 31, 2025).

48.     Notably, a Yelp review from October 23, 2025 not only confirms that continued operation of the Business, but confirms that the Business was transferred to an individual named

"Charles Samuel:"



(Last visited October 31, 2025).

49.     Reviews of the Business on Google also explicitly reference "New Ownership" as of five months ago, while also evidencing the damage being done to the Skinovatio brand:



(Last visited October 31, 2025).

50.     Although Zuberi is not a party to the APA or the Franchise Agreement, since, upon information and belief, he is the founder, owner, and member of Medspa (the infringing party), he is the "moving force" behind the infringing activities complained of herein.

51.     Defendants' failure to abide by the Post-Termination Obligations required under the APA and the Franchise Agreement, and continued use of the Skinovatio Mark and Skinovatio system, in connection with the operation of a medical spa offering competitive products and services at the site of the formerly-licensed Skinovatio spa has caused, and is continuing to cause, irreparable harm.

52.     Further, upon information and belief, Defendants have transferred business assets and equipment from the Lincoln Park Location to another location operated by them, without Plaintiffs' authorization.

53.     Pursuant to the APA, Defendants' ownership of the business assets and equipment at the Lincoln Park Location were contingent upon Defendants' payment of the Purchase Price:

> 1.  **Transfer and Pricing of Certain Assets to be Sold.** For the total purchase price of one-hundred fifty thousand dollars ("Purchase Price"), SELLER shall sell and BUYER shall buy:
>
>     a.  **Business**. That Seller's business site being operated as a SKINOVATIO MEDICAL SPA located at: 2632 N Lincoln Ave, Chicago, IL 60614 (hereinafter referred to as the "Premises"), together with all assets, equipment, fixtures, inventory, owned by SELLER presently at Premises. The aforesaid shall be collectively referred to as "Purchased Assets".
>
>     b.  **Inventory**. All Inventory owned by SELLER located at the Premises at the time of closing. Description of such inventory to be included will be in the attached Exhibit A.
>
> 2.  **Purchase Price.** The Purchase Price plus or minus adjustments, deposit, credits and prorations shall be paid at closing. Purchase price will be tendered to seller in 60 monthly payments of $2,500.00 These payments will be due on the 1st of every month.

See Exhibit B, at §§ 1, 2.

54.     By failing to pay the Purchase Price, the business assets at the Lincoln Park Location ceased to belong to Defendants, and rightful ownership returned to Plaintiffs.

55.     By transferring the business assets and equipment from the Lincoln Park Location,

Defendants have deprived Plaintiffs of property to which they have an immediate and unconditional right.

56.     Pursuant to Section 18(o) of the APA and Section 23.11 of the Franchise Agreement, Plaintiffs are entitled to recover, as the prevailing party, their costs and expenses, including legal fees and expenses, in connection therewith, against the Individual Defendants. See Exhibit B, at § 18(o); Exhibit C, at § 23.11.

57.     Additionally, as this is an exceptional case of trademark infringement based upon Defendants' deliberate, willful, and bad faith acts of infringement, Plaintiffs are also entitled to recover their attorneys' fees under 15 U.S.C. § 1117(a).

58.     Defendants have not voluntarily ceased their unlawful acts, thus necessitating the present lawsuit.

**COUNT I:**
**DECLARATORY JUDGMENT**
**(As to All Defendants)**

59.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 58 hereof.

60.     An actual, substantial, and continuing justiciable controversy exists between the Parties regarding whether Defendants are bound by the terms of the Franchise Agreement notwithstanding their failure to sign the document.

61.     The Asset Purchase Agreement itself repeatedly acknowledges the existence of a franchise relationship. Section 6 expressly conditions the APA on "franchisee approval from franchisor," confirming that the transaction was structured with the understanding that Defendants would operate the Lincoln Park Business as a Skinovatio franchise. Section 11 obligates Defendants to pay "standard franchise royalties of 6%," a hallmark obligation of franchisees under Plaintiffs' system. Section 7 requires training from Plaintiffs' principal, Aleksandra Waibel,

consistent with the training provisions in Plaintiffs' Franchise Agreement. Finally, the APA references the lease for the "Skinovatio Med Spa," underscoring the parties' shared understanding that the Business was being transferred as part of New Look's franchise system. Taken together, these provisions demonstrate that the APA presupposed a binding franchise relationship, and Defendants' subsequent conduct—operating under New Look's Marks, system, and training—further confirms that the Franchise Agreement must be implied in fact. In addition, Defendants' course of conduct manifested assent to the Franchise Agreement by: (a) undergoing New Look's initial training program, (b) using the Skinovatio Mark in the operation of the Lincoln Park Location, and (c) operating under Plaintiffs' business and marketing system.

62.     Further, Defendant Saad Zuberi is also a principal of MT & ZU Ventures LLC, which executed a Franchise Agreement and Guaranty (both signed by Zuberi) with Plaintiffs for the South Loop Location. Accordingly, he is fully aware of the obligations imposed under the Franchise Agreement and knowingly bound Medspa to those obligations by his conduct.

63.     Plaintiffs are entitled to a declaration under 28 U.S.C. §§ 2201–2202 that the Franchise Agreement is valid and enforceable against Defendants with respect to the Lincoln Park Location.

## COUNT II:
## TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a) and Common Law)
### (As to All Defendants)

64.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 63 hereof.

65.     Posh Beauty has spent substantial sums to promote, and has generated substantial revenue and recognition from, the Skinovatio Mark, which is distinctive.

66.     The distinctive Skinovatio Mark has become impressed upon the minds of the trade and public and identifying Posh Beauty products and services, as part of a developed medical spa concept, and consumers understand that marks and logos to indicate the source or origin of such products and services provided in connection with a medical spa experience.

67.     Posh Beauty has developed a large and valuable business system through its use of the Skinovatio Mark, and the reputation and goodwill in that mark is of great value to Posh Beauty.

68.     Defendants have used in commerce the Skinovatio Mark without Posh Beauty's consent or authorization.

69.     Such use of the Skinovatio Mark is likely to (and already has) confuse(d) consumers into believing that Defendants and their businesses are associated with, endorsed by, or sponsored by, Posh Beauty when they are not.

70.     Defendants' conduct constitutes false designation of origin, and unfair competition, in violation of the Lanham Act, 15 U.S.C. § 1125(a), and common law.

71.     As a result of Defendants' willful and intentional acts, Posh Beauty has incurred attorneys' fees and expenses.

72.     Defendants have caused and, unless restrained by this Court, will continue to cause, irreparable harm, damage, and injury to Posh Beauty.

73.     Posh Beauty has no adequate remedy at law.

## COUNT III:
## TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114)
### (As to All Defendants)

74.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 73 hereof.

75.     Posh Beauty owns a federal registration for the Skinovatio Mark in connection with its Skinovatio medical spa operations, namely, U.S. Reg. No. 590507 (the "Registration").

76.     The Registration serves as *prima facie* evidence of the validity of the registered mark and of Posh Beauty's ownership of the Skinovatio Mark and exclusive right to use the marks in commerce pursuant to 15 U.S.C. § 1115(a).

77.     Defendants have used a colorable imitation of the registered marks in connection with the sale, offering for sale, distribution, and advertising of spa services in a manner likely to cause confusion, or to cause mistake, or to deceive.

78.     Defendants' conduct constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

79.     Defendants' willful and intentional actions have caused, and unless restrained by this Court, will continue to cause irreparable harm and injury to Posh Beauty.

80.     Posh Beauty has no adequate remedy at law.

**COUNT IV:**
**BREACH OF CONTRACT – INJUNCTIVE RELIEF**
**(As to All Defendants)**

81.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 81 hereof.

82.     The APA is a valid contract executed by NLLAH and Defendants.

83.     The Franchise Agreement is a valid implied contract executed by New Look and Defendants.

84.     The Franchise Agreement contains non-competition provisions under which, upon termination, Defendants must "immediately cease to operate the Franchised Business and shall not thereafter, directly or indirectly, represent to the public or hold itself out as a present or former franchisee of Franchisor." See Exhibit C, at § 17.1(a).

85.     The Franchise Agreement also provides that, upon termination, Defendants must "cease to use the Trade Secrets, or other Confidential Information, the System and the Marks,

including, without limitation, all slogans, symbols, advertising materials, stationery, forms, and other items which display or are associated with [the Skinovatio Mark]." See Exhibit C, at § 17.1(b).

86.     Defendants breached the APA and the Franchise Agreement by continuing to use the Skinovatio Mark following termination of both agreements.

87.     Defendants breached the APA and the Franchise Agreement by continuing to operate a medical spa offering the same or similar products at the site of the formerly-licensed Business, in violation of the covenants contained in the APA and the Franchise Agreement.

88.     Although Zuberi never signed a guaranty in connection with the APA or Franchise Agreement, since he is the principal and owner of MT & ZU and has control over the infringing conduct, he too must be enjoined from continuing to use New Look's Marks without authorization at the site of the formerly-licensed Business which, upon information and belief, he or a related third-party still operates. This is especially so since Zuberi is continuing to use New Look's Marks without authorization and after termination at a different formerly-licensed location.

89.     As a direct result of Defendants' willful and intentional actions, the Defendants have caused and, unless restrained and enjoined by this Court, will continue to cause irreparable harm and injury to Skinovatio.

**COUNT V:**
**BREACH OF CONTRACT - DAMAGES**
**(As to MEDSPA)**

90.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 89 hereof.

91.     Defendants' above-referenced actions, including their failure to pay Plaintiffs past due amounts owed under the Franchise Agreement and the APA, including for assets and inventory

purchased, services rendered for which royalties were not paid, constitute material breaches of both agreements.

92.    As a direct result of Defendants' breaches, Plaintiffs have been damaged in an amount to be proven at trial.

**COUNT VI:**
**UNFAIR COMPETITION**
**(As to All Defendants)**

93.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 92 hereof.

94.    Defendants have engaged and will continue to engage in illegally using and displaying the Skinovatio Mark in violation of the Lanham Act.

95.    Defendants improperly use, and will continue to use, Posh Beauty's confidential information in furtherance of the operation of Defendants' businesses, which competes directly with Posh Beauty of the same location and using the same system and trade secrets as the formerly-licensed businesses.

96.    Defendants have and will continue to unfairly profit from using the Skinovatio Mark and good will to confuse, mislead, and/or deceive current and prospective Posh Beauty customers into obtaining goods and services from Defendants' business because the location appears to be a Skinovatio Business.

97.    Through their actions, Defendants are intentionally attempting to deceive Posh Beauty's current and prospective customers for Defendants' business gain.

98.    As a direct and proximate result of Defendants' actions, Posh Beauty has suffered and continues to suffer irreparably injury and is entitled to monetary damages in an amount to be determined at trial.

**COUNT VII:**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS**
**PRACTICES ACT**
**(As to All Defendants)**

99.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 98 hereof.

100.     Defendants are using the Skinovatio Mark to identify the services provided from their formerly-licensed location as those of a Skinovatio Business.

101.     However, Defendants are actually providing the services through a competing business.

102.      Defendants' use of the Skinovatio Mark is likely to (and already has) cause(d) confusion, cause mistake, and/or deceive as to Medspa's affiliation, connection, or association with Posh Beauty, or as to the origin, sponsorship, or approval of goods, services, or commercial activities.

103.     Defendants have and will continue to use the Skinovatio Mark, goodwill, and confidential information to lure customers who believe that he or she is obtaining services from Posh Beauty.

104.     The unlawful conduct of Defendants described herein constitutes unfair or deceptive acts or practices in the conduct of trade or commerce in violation of 815 Ill. Comp. Stat. Ann. 505/2.

105.     As a direct and proximate result of Defendants' wrongful conduct, Posh Beauty has suffered damages to the value of the Skinovatio Mark and to customer goodwill.

106.     Defendants' acts have been and are being done knowingly and intentionally to cause confusion, to cause mistake, and/or to deceive.

107.     As a result, Posh Beauty has suffered and continues to suffer irreparable injury and has incurred and continues to incur monetary damages in an amount to be determined at trial.

## COUNT VIII:
## UNJUST ENRICHMENT
### (As to All Defendants)

108.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 107 hereof.

109.    Defendants have knowingly and intentionally misappropriated confidential information in furtherance of their operation of their business from the same locations and using the same marks, methods of operation, and system.

110.    Defendants have used and continue to use the formerly-licensed location as a business offering Skinovatio's unique medical spa treatments to the general public and continue to display the (or marks similar to the) Skinovatio Mark in order to confuse, mislead, and/or deceive others in violation of the Lanham Act.

111.    Zubari is the signatory to the APA and Franchise Agreement and the owner of MDZU, and Defendants are aware of contents thereof, such that Posh Beauty expects to be compensated and that Defendants should compensate Posh Beauty for use of the Skinovatio Mark, confidential information, and goodwill as set forth in the Franchise Agreement.

112.    Defendants knowingly retain these benefits, to which they are not rightfully entitled, at the expense and to the damage of Posh Beauty.

113.    There is no adequate remedy at law that will protect Posh Beauty from continued irreparable injury or fully compensate it for the damage caused by Defendants' wrongful conduct.

## COUNT IX:
## VIOLATION OF THE DEFEND TRADE SECRETS ACT
### (As to All Defendants)

114.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 113 hereof.

115.    The DTSA provides a private civil action for the misappropriation of trade secrets that are related to a product or service used in interstate or foreign commerce.

116.    Posh Beauty owns numerous trade secrets, including without limitation, its standard operating procedures, vendor lists, form documents, and customer lists, Posh Beauty's trade secrets implicate interstate commerce, and each of the Defendants are engaged in interstate commerce.

117.    Throughout Posh Beauty's existence, Posh Beauty has carefully developed and refined its trade secrets, which are key ingredients of their continued success.

118.    Posh Beauty's trade secrets provide independent economic value as Posh Beauty uses the confidential information to procure and maintain customers, through competitive pricing and confidential and proprietary processes and procedures.

119.    Posh Beauty's confidential information is not generally known and is not readily ascertainable by proper means.

120.    Posh Beauty has taken extensive measures to preserve and protect its trade secrets for the purpose of maintaining its competitive advantage, and only discloses such information to officers, employees and licensees who have promised to keep the confidential information strictly confidential to only use it in connection with a Skinovatio Business.

121.    Posh Beauty took steps to prevent disclosure of their confidential information, including, but not limited to mandating those with access sign confidentiality agreements, and preventing its confidential information from being accessed by the public.

122.    Defendants have intentionally disclosed Plaintiffs' trade secrets to others for their benefit and/or the benefit of third parties with knowledge that such disclosure would harm Plaintiffs.

123.    As a direct and proximate result of each of the Defendants' willful, improper, and unlawful disclosure of Posh Beauty's confidential information, Posh Beauty has suffered and will continue to suffer immediate and irreparable harm. Pursuant to 18 U.S.C. § 1836(b)(3)(B), Posh

Beauty is entitled to recover damages for its actual losses, and to prevent Defendants' unjust enrichment. Pursuant to 18 U.S.C. § 1836(b)(3)(A), the Court should enjoin Defendants' use and misappropriation of Plaintiffs' confidential information.

124.    Each of the Defendants' misappropriation of Posh Beauty's Confidential Information is willful and malicious, thus warranting an award of exemplary damages under 18 U.S.C. § 1836(b)(3)(C), and an award of reasonable attorneys' fees under 18 U.S.C. § 1836(b)(3)(D).

**COUNT X:**
**CONVERSION**
**(As to All Defendants)**

125.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 124 hereof.

126.    Pursuant to the APA, Defendants purchased certain equipment and other assets from Plaintiffs under an installment payment plan.

127.    Upon information and belief, Defendants have removed equipment and assets from the Lincoln Park Location without authorization and relocated them to another location they operate.

128.    Defendants' unauthorized exercise of dominion and control over this property, in derogation of Plaintiffs' rights, constitutes conversion under Illinois law.

129.    As a result of Defendants' wrongful acts, Plaintiffs have suffered damages in an amount to be proven at trial.

**PRAYER**

WHEREFORE, Plaintiffs request judgment with each item of this prayer being for relief additional to, and alternative to each other item and not an election of remedies, as follows:

A.    The entry of an order declaring that the Franchise Agreement is valid and enforceable *nunc pro tunc*, and declaring that Defendants are bound by the Franchise Agreement

notwithstanding their failure to execute it;

      B.     The entry of a preliminary and permanent injunction prohibiting Defendants and their respective agents, representatives, servants, employees, attorneys, officers, directors, shareholders, licensees, affiliates, joint venturers, parents, subsidiaries, related corporations and companies, and all others in privity or acting in concern with them, from:

            i.     Using the Skinovatio Mark and any confusingly-similar marks;

            ii.     Otherwise suggesting that Defendants are affiliates of, sponsored by, or endorsed by Posh Beauty;

            iii.     Engaging in any other activity constituting unfair competition or trademark infringements;

            iv.     Operating a competing business offering spa services to the general public (or similar establishment) in Defendants' former Posh Beauty licensed locations or within 20 miles thereof, for an indefinite (or reasonable) period, and extending such period for the amount of time during which Defendants are willfully violating their covenants;

            v.     Maintaining, using, or disclosing Plaintiffs' highly confidential information; and

            vi.     Assisting, aiding, or abetting another person or business entity in engaging in or performing any of the activities enumerated above.

      C.     The entry of a preliminary and permanent injunction ordering Defendants to return all manuals and Confidential Information to Plaintiffs;

      D.     The entry of a preliminary and permanent injunction ordering Defendants to assign their leases, social media accounts, business telephone numbers, and other business assets, to Plaintiffs;

    E.     The entry of a preliminary and permanent injunction ordering Defendants to return to Plaintiffs all equipment and assets wrongfully removed from the Lincoln Park location, and awarding Plaintiffs damages for conversion of such property in an amount to be proven at trial;

    F.     Awarding reasonable attorneys' fees and costs pursuant to the Lanham Act and the APA;

    F.     Awarding interest as allowed by law.

    G.     Awarding such other and further relief as the Court deems just and proper.

Dated: November 10, 2025

/s/ George P. Apostolides
George P. Apostolides
Bethany Beaver
**SAUL EWING LLP**
161 North Clark Street, Suite 4200
Chicago, IL 60601
(312) 876-7100
Email: george.apostolides@saul.com
Email: bethany.beaver@saul.com

Brett M. Buterick*
Thomas Emmons*
**THE FRANCHISE FIRM LLP**
225 Wilmington West Chester Pike, Suite 200 Chadds Ford, Pennsylvania 19317
(215) 965-9499

Email: brett@thefranchisefirm.com
Email: tom@thefranchisefirm.com

*Pro hac vice forthcoming*

## <u>VERIFICATION</u>

I, Aleksandra Waibel, being duly sworn, deposes and says:

I am Chief Executive Officer of Plaintiffs. I have read the foregoing Verified Complaint and know the contents thereof and state the allegations are true and correct. I base this Verification on my own personal knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true and correct. The grounds of my knowledge, information, and belief, are derived from my position as Chief Executive Officer, my personal involvement in the vents underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of Plaintiffs' records and conversations with Plaintiffs' employees.

Dated: November 3, 2025

Signed by:

295DCF17A472438...

_____
Aleksandra Waibel, CEO